IN THE UNITED STATES DISCTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD DELONG | : | |
| 2091 Riverside Drive | : | CIVIL ACTION |
| Williamsport, PA 17702 | : | |
| | : | CASE NO.: |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| WENDY'S | : | |
| 1007 N. Loyalsock Avenue, | : | |
| Montoursville, PA 17754 | : | |
| and | : | |
| PENN FOREST FOODS, INC. | : | |
| 1007 N. Loyalsock Avenue, | : | |
| Montoursville, PA 17754 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Chad Delong, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.     This action has been initiated by Plaintiff to redress violations by Wendy's  and Penn Forest Foods, Inc. (hereinafter collectively referred to as "Defendants") for violation of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, et. seq.), and the Pennsylvania Human Relations Act ("PHRA")[1]. Plaintiff asserts, *inter alia*, that he experienced

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

1

unlawful workplace discrimination and retaliation, culminating in his termination from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

4. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6. Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

2

7.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.    Plaintiff is an adult, with an address as set forth in the caption.

9.    Defendant Wendy's is an international fast food chain with locations across the United States of America, including Pennsylvania. At all times relevant herein, Plaintiff worked for Defendant at the above-referenced address.

10.    Defendant Penn Forest Foods, Inc. is an entity operating Wendy's franchise locations in Pennsylvania, including the location referenced in the caption.

11.    Because of their interrelation of operations, common ownership or management, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

12.    At all times relevant herein, Defendants acted by and through their agents, servants, and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

13.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.    Plaintiff was hired to work for Defendants on or about August 25, 2025, as a Shift Manager.

15.    At all relevant times, Plaintiff was supervised by General Manager, Carrah Emerick ("Emerick"), and District Manager, Kaya (last name unknown).

3

16.    During the course of his employment with Defendants, Plaintiff was a hard-working employee who performed his job well and was not subjected to any form of performance-based progressive discipline.

17.    Plaintiff has and continues to suffer from disabilities, including but not limited to autism and attention-deficit/hyperactivity disorder ("ADHD").

18.    Plaintiff's disabilities affect his ability to concentrate, communicate, multi-task and work (at times), among other major life activities.

19.    Despite Plaintiff's aforesaid disabilities and limitations, he was able to perform the duties of his job well with Defendants; however, he did request reasonable accommodations in order to perform his job more effectively.

20.    In his role as Shift Manager, Plaintiff was sometimes assigned to work as a drive-thru associate, taking orders from customers and ensuring those orders were properly fulfilled.

21.    In this role, Plaintiff (at times) had difficulty "processing" multiple customer orders and fulfilling all the job requirements of working the drive thru while still ensuring his job responsibilities as Shift Manager were accomplished.

22.    As a result, Plaintiff advised Defendants' management of his disabilities and requested he be accommodated by not being assigned to work the drive thru position, which was not a listed job duty for his position of Shift Manager.

23.    Rather than easily accommodate Plaintiff's incredibly reasonable request, Emerick denied his request and subsequently treated him with hostility in a manner she did not before Plaintiff disclosed his disabilities.

24.    By way of example, but not intended to be an exhaustive list, Emerick started to overly scrutinize Plaintiff's performance disparately compared to Defendants' non-disabled

4

employees, speak to him in a rude and condescending manner, and repeatedly assigned him to work the drive thru area solely because of his disabilities and request to be accommodated.

25.     Moreover, shortly after disclosing his disabilities and requesting accommodations, Defendants' management demoted Plaintiff from Shift Manager to Shift Lead, and systematically reduced his hours.

26.     Initially, Plaintiff was working full-time, approximately forty (40) hours per week, but by December 2025, Defendants were only offering Plaintiff approximately seventeen (17) hours per week.

27.     In response, Plaintiff complained repeatedly to Defendants' management that he should have not been demoted, that he needed more hours to work, and that he was being discriminated against due to his disabilities and request for accommodations.

28.     Plaintiff initially complained verbally to Emerick, but when his complaints were left unresolved, he complained repeatedly in writing via text message.

29.     Defendants' management told Plaintiff they would properly address his concerns, but they never did, and instead increased their hostility towards him.

30.     It became clear to Plaintiff from Defendants' incredibly hostile behavior that management was attempting to concoct a reason to terminate him.

31.     Within a few days of his last complaint of discrimination, on or about January 24, 2026, Plaintiff was abruptly terminated.

32.     When Plaintiff inquired why he was being terminated, Defendants did not provide any justification.

33.     Therefore, Plaintiff avers that he was actually terminated due to discrimination and in retaliation for his protected complaints of discrimination and requests for accommodation.

5

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate;**
**and [3] Retaliation)**

34.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35.    Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

36.    Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants, however, Plaintiff did require reasonable medical accommodations at times.

37.    Plaintiff requested reasonable accommodations from Defendants, including but not limited to not being assigned to the drive thru area.

38.    Defendants' management refused to accommodate Plaintiff's disabilities and subsequently treated him hostility and animosity for requesting the same, demoting Plaintiff and reducing his hours.

39.    In response, Plaintiff made multiple complaints of discrimination that Defendants' management failed to rectify.

40.    Shortly after making his last complaint of discrimination, Plaintiff was terminated on or about January 24, 2026.

41.    Plaintiff believes and therefore avers that his disabilities were a motivating and/or determinative factor in Defendants' decision to terminate his employment.

42.    Plaintiff also believes and avers that he was terminated in retaliation for engaging in protected activity under the ADA.

43.    Defendants' actions as aforesaid constitute violations of the ADA.

6

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 27, 2026

8